UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FRANKIE SANCHEZ,

                              Petitioner,

   v.

                                                 9:18-CV-1188

VERONICA FERNANDEZ,                       (GLS/ATB)
Warden, FCI Ray Brook,

                              Respondent.

---

JAMES P. EGAN, Asst. Fed. Public Defender for Petitioner
COURTENAY K. McKEON, Asst. Fed. Pub. Defender for Petitioner
MIROSLAV LOVRIC, Asst. U.S. Attorney for Respondent

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge. Petitioner brings this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the legality of his 1993 sentence, which was imposed as the result of a conviction in the United States District Court for the District of Maryland. *United States v. Sanchez*, 1:92-CR-301. Petitioner filed his application for writ of habeas corpus in the District of Maryland on May 7, 2018, and the court transferred the action to the Northern District of New York on October 2, 2018, after granting a motion to transfer filed by petitioner's counsel in Maryland. (Dkt. Nos. 1-3). Petitioner is now represented by the Federal Public Defender in the Northern District of New York.

     On October 10, 2018, Senior Judge Sharpe conducted an initial review of the petition and directed the respondent to file and serve an answer to the petition,

including any relevant records. (Dkt. No. 5). Respondent has filed an answer and memorandum of law, arguing for dismissal of the petition, and petitioner has filed a reply. (Dkt. No.s 7, 8).

## I.     Relevant Facts and Procedural History

As stated by Judge Sharpe in his initial review of this action, petitioner asserts that, following a trial in March 1993, he was convicted of conspiracy to distribute and possess with intent to distribute fentanyl and heroin in violation of 21 U.S.C. § 846; possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1); and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). (Pet. at 4). In June 1993, the District Court for the District of Maryland imposed a life sentence after applying the distribution resulting-in-death enhancement under the United States Sentencing Guidelines ("USSG") § 2D1.1(a)(2).1. *Id.* at 4-5. According to the petitioner, the enhancement was applied

> after finding at the sentencing hearing that fentanyl distributed through the conspiracy resulted in the deaths of drug users in Baltimore in early 1991. The court found as much without any mention of the but-for-causation' standard between the distribution and the deaths . . . . No such standard of causation existed in the Fouth Circuit at the time of [petitioner]'s sentencing.

*Id.* at 5. On April 21, 1995, the Fourth Circuit affirmed petitioner's convictions and sentence on direct review. *See United States v. Ortiz*, 52 F.3d 323 (4th Cir. 1995).

On April 13, 2007, petitioner filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. (Dkt. No. 598 in 92-CR-301 (D. Md.)). However, on October 7, 2007, the court denied the petition as time-barred. (Dkt. Nos. 604, 605). Petitioner's

appeal of the denial of 2255 relief was dismissed by the Fourth Circuit on April 21, 2008.[1] (Dkt. No. 611). The docket sheet in petitioner's District of Maryland criminal action also shows that petitioner filed another motion to vacate his conviction on June 15, 2011, together with a request to "toll" the statute of limitations, which was denied without prejudice on September 30, 2011. (Dkt. Nos. 635, 640-41 in 92-CR-301). The court found that petitioner's motion was "second or successive" and directed him to properly request permission from the Fourth Circuit. (Dkt. No. 640 at 2) (citing inter alia 28 U.S.C. § 2244(b)(3)(A) & 2255).

Petitioner moved for reconsideration of the court's September 30, 2011 order. (Dkt. No. 642). On January 26, 2012, the court granted reconsideration, based on the court's finding that petitioner did not receive proper notice that his 2007 motion was going to be recharacterized as a section 2255 motion. (Dkt. No. 644 at 3). Thus, the court considered petitioner's June 2011 motion to vacate as his first "properly filed" motion to vacate and proceeded to consider whether to grant equitable tolling of the statute of limitations period.[2] (*Id.*) After extensive discussion of equitable tolling in petitioner's situation, the court denied the equitable tolling that petitioner requested and dismissed the petition. (Dkt. No. 644 at 3-8). Petitioner appealed the denial of his 2255 motion, and on June 19, 2012, the Fourth Circuit denied a certificate of appealability and dismissed petitioner's appeal. (Dkt. Nos. 651, 654). *United States v. Sanchez*, 474

---

[1] The Fourth Circuit's Mandate was filed on June 13, 2008. (Dkt. No. 615 in 92-CR-301).

[2] As stated above, the court found that petitioner's 2007 motion was time-barred. Petitioner acknowledged that the statute of limitations had expired. Petitioner's only argument was that the court should grant equitable tolling of the statute.

3

F. App'x 185 (4th Cir. 2012) (per curiam).

On March 22, 2013, petitioner filed another motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that his attorney was ineffective during "plea negotiations," and petitioner was denied the opportunity to plead guilty. (Dkt. No. 655). On April 4, 2013, the district judge denied the motion, finding that it was "undoubtedly a successive § 2255 challenge to petitioner's conviction, and may not be considered absent leave to do so from the Fourth Circuit." (Dkt. No. 657 at 2). The court declined to issue a certificate of appealability. (*Id.* at 3).

On November 12, 2014, petitioner made a motion to "Reduce Sentence," based on an amendment to the USSG. (Dkt. No. 663). The court sent petitioner a letter, acknowledging receipt of the motion and informing petitioner that the Federal Public Defender would be appointed to represent any individual who might qualify for a sentence reduction under the particular USSG amendment.[3] (Dkt. No. 664). The Government opposed petitioner's motion, arguing that the particular amendment did not apply to the petitioner's sentence because his sentence was not based on the USSG § 2D1.1(c) "drug quantity" guidelines, instead, petitioner was sentenced under USSG 2D1.1(a)(2) "because the offense of conviction established that death or serious bodily injury resulted from the use of the substance." (Dkt. No. 674).

On November 23, 2015, petitioner filed, what the court docketed as a "reply" to the government's opposition. (Dkt. No. 675). In this document, petitioner argued that

---

[3] The Federal Public Defender declined to represent petitioner on this motion. (Dkt. No. 673 at 1).

his sentence should be reduced based on the "*Hollaway* Doctrine."[4] (Dkt. No. 675). The district court judge denied petitioner's motion to reduce his sentence without opinion on November 24, 2015. (Dkt. No. 676).  The court in Maryland may not have realized that petitioner's "Memorandum of Law," docketed at No. 675, was a new motion to reduce his sentence, separate from the motion that was based on the USSG amendment and filed as Docket No. 663, and which was completely unrelated to the USSG amendment.  Additionally, although the court denied petitioner's motion for reduction of sentence on November 24, 2015, petitioner continued to write to the court

---

[4] *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014).  In *Holloway*, the trial judge reduced the movant's sentence "even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence." 68 F. Supp. 3d at 311.  In *Holloway*, the court found that Mr. Holloway had been "disproportionately subjected to 'stacking' of § 924 counts . . . ." *Id.* at 313.  Like petitioner in this case, Mr. Holloway's lengthy sentence was affirmed by the Second Circuit in 1997, and by the Supreme Court in 1999.  The District Court denied Holloway's section 2255 motion in 2002, and the Second Circuit refused to issue a certificate of appealability. *Id.*  Finally, Holloway's effort to file a successive section 2255 petition was denied by the Second Circuit in 2010. *Id.*  Like this petitioner, Holloway attempted to better himself in "throughout the two decades of his incarceration," and the court listed his achievements. *Id.* at 314.  In late 2012, Holloway filed a motion to reopen his section 2255 proceeding under Fed. R. Civ. P. 60(b), and the court stated that "[r]ecognizing that there were good reasons to revisit Holloway's excessive sentence, but no legal avenues or bases for vacating it, [the court] issued an order . . .", requesting that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions. *Id.*  Based upon Holloway's "unique" case, the United States Attorney withdrew her opposition to the Rule 60(b) motion and did not oppose granting the underlying section 2255 motion so as to vest the court with authority to vacate two of Holloway's section 924(c) convictions. *Id.* at 315.  The court then stated that there was "important work to be done for resentencing," but the government's agreement "has authorized me to give Holloway back more than 30 years of his life. *Id.* at 315-16.  In this petitioner's motion, he was asking the Maryland District Judge to resentence him in the interests of justice as the court did in *Holloway*, based on his very lengthy period of incarceration and his exemplary achievements during his incarceration.  This was relief that only the sentencing court could afford this petitioner because it **required the government's agreement**.  However, petitioner in this case never received a response to this motion.  Many of the courts considering similar motions have declined to apply this doctrine, and it does not appear that the Second Circuit has addressed the issue. *See Wright v. United States*, No. 4:95-CR-39, 95-CR-44, 2018 WL 4854081 at *2 (E.D. Va. Oct. 5, 2018) (discussing 71 district court decisions, issued after *Holloway*, each denying the petitioner's motion, most because the government opposed vacatur).  The court also noted that no circuit court had addressed the issue at the time of Mr. Wright's decision. *Id.*

asking for the status of his "pending" motion pursuant to *Holloway*.[5] (Dkt. Nos. 681, 686, 689). On July 5, 2017, petitioner asked about his "pending" motion.[6] (Dkt. No. 686). Petitioner wrote another letter to the court asking about the *Holloway* motion on July 10, 2017. (Dkt. No. 689).

In the meantime, on January 13, 2016, petitioner filed an application for clemency, which was denied on October 11, 2016. (Dkt. No. 1-6 in NDNY action). On May 7, 2018, petitioner filed the current motion to "vacate" sentence under § 2241, and on June 8, 2018, petitioner filed a letter in the Maryland criminal action, addressed to the original District Judge (William D. Quarles),[7] asking the judge to use his discretion to reduce petitioner's sentence. (Dkt. No. 707). There are no responses to any of petitioner's pro se letters regarding the "status" of his *Holloway* motion or the letter, asking the court for a "discretionary" reduction. Instead, petitioner's section 2241 petition was transferred to the Northern District of New York on October 2, 2018, after the petitioner's newly appointed attorney moved to transfer on October 2, 2018. (Dkt. Nos. 719, 722).

## II.   Petitioner's Contentions

Petitioner claims that, in light of the Supreme Court's decision in *Burrage v.*

---

[5] This court also notes that petitioner filed a "certificate of service" of his *Holloway* motion on November 30, 2015, six days after the court denied petitioner's Guidelines-based motion to reduce his sentence. (Dkt. No. 677).

[6] Although he referred to Dkt. No. 677 in identifying the motion, Dkt. No. 677 is the "Certificate of Service" for the motion in addition to a request for documents.

[7] On May 8, 2018, the Maryland docket sheet indicates that Judge Richard D. Bennett was assigned to the remains of the criminal action.

*United States*, 571 U.S. 204 (2014), his conviction should be vacated, and he should be released. *Burrage* holds that a sentence for distribution resulting in death under 21 U.S.C. § 841(b)(1)(C) requires the Government to prove beyond a reasonable doubt that . . . distribution of the drugs was the 'but for' cause of a person's death. *Burrage, supra*. Petitioner claims that the "but for" standard was not applied in his case, and thus, the district court's imposition of the "distribution-resulting-in-death" enhancement was unlawful.

## III. Analysis

### A. Legal Standards

Two statutes provide mechanisms for a federal prisoner to challenge his detention: 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Actions under section 2255 challenge the imposition of a federal sentence. Section 2255 is thus the proper procedural mechanism for a federal prisoner who alleges that his sentence was unconstitutionally or illegally imposed, entered by a court without jurisdiction to impose the sentence, exceeded the maximum detention authorized by law, or is otherwise subject to collateral attack. *See Morales v. United States*, 635 F.3d 39, 42-43 (2d Cir. 2011); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004). Motions under section 2255 must be filed with the sentencing court. *Boumediene v. Bush*, 553 U.S. 723, 775 (2008). The sentencing court is the proper venue for section 2255 motions to vacate because the court is "already familiar with the facts of the case." *Id.*

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a petitioner may only file one motion to vacate his sentence pursuant to section 2255

unless strict "gate-keeping" standards are met. *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). As amended, section 2255 provides limits on second or successive motions. A second or successive motion under section 2255 must be certified by a panel of the appropriate court of appeals as provided in 28 U.S.C. § 2244. In order for the Circuit to certify a second or successive 2255, the motion must contain

> (1) newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

By contrast, 28 U.S.C. § 2241 permits federal prisoners to challenge the execution of a sentence, including the computation of the sentence by parole officers, disciplinary actions imposed by prison officials, the conditions of the facility in which the prisoner is housed, and parole decisions. *Joseph v. Breckon*, No. 9:17-CV-688, 2018 WL 550609, at *4 (N.D.N.Y. Jan. 17, 2018) (citing *Adams*, 372 F.3d at 135; *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003); *Jiminian v. Nash*, 245 F.3d at 146). Petitions brought pursuant to section 2241 must name the petitioner's warden as the respondent and must be brought in the district of petitioner's confinement. *Id.* (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 447 (2004); 28 U.S.C. § 2241(a)).

In rare circumstances, a federal prisoner may challenge the validity of his or her

conviction under section 2241 if the petitioner can show that the remedy under section 2255 is "'inadequate or ineffective to test the legality of his detention.'" *Id.* (quoting 28 U.S.C. § 2255(e); *Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003); *Triestman v. United States*, 124 F.3d 361, 373-374 (2d Cir. 1997)). The courts refer to this section of 2255 as the "Savings Clause," and in *Triestman*, the court cautioned that its remedy is narrow and exists only "'to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it.'" *Id.* (quoting *Triestman*, 124 F.3d at 378 (citations omitted)). However, the remedy under section 2255 is not inadequate or ineffective simply because the petitioner cannot meet the "gate-keeping" requirements of the AEDPA, as long as the claim that the petitioner seeks to raise was previously available to him on direct appeal or in a prior section 2255 petition. *Id.* (citing *Triestman*, 124 F.3d at 376).

### B. Application

In this case, both parties agree that petitioner's application is purely a challenge to the sentence itself, not to the execution of his sentence, and would therefore be properly brought as a motion to vacate pursuant to section 2255 in the sentencing court, which in this case was the District of Maryland. The parties also agree that petitioner has brought more than one section 2255 motion, and the first was dismissed as untimely. As a result, any section 2255 motion brought by petitioner at this time would be "successive" and would have to be certified by the Fourth Circuit before the District of Maryland could consider it.

Petitioner also concedes that he cannot meet the "gate-keeping" requirements for

9

a successive section 2255 motion because *Burrage* did not announce a new rule of "constitutional law," and its holding has not been made retroactive to cases on collateral review by the Supreme Court. *Burrage* decided only an issue of statutory interpretation, not a constitutional claim. Petitioner seeks to use the "savings clause" and argues that a motion under 2255 is inadequate or ineffective to test the legality of his detention and thus, must be allowed to proceed in this court under section 2241.

The only issue in dispute in this case is whether petitioner may now challenge his 1992 sentence in an application for habeas corpus relief under section 2241 in the Northern District of New York which is the district of petitioner's current incarceration. Petitioner asks the court to adopt the "savings clause" test from *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018), which states that a petitioner may challenge a sentence under section 2241 when the following criteria are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* One of the problems with adopting the Fourth Circuit law, although it is logical to do so, since the petitioner was sentenced in the Fourth Circuit, is that the Fourth Circuit is one of the courts that had declined to find that *Burrage* is retroactive to cases on collateral review. Thus, petitioner cannot meet the second requirement of what the Fourth Circuit referred to in *Wheeler* as the "new" savings clause test, quoted above.

886 F.3d at 428-29. In fact, a petition for certiorari was just filed in the Supreme Court of the United States on behalf of a petitioner who is challenging a Fourth Circuit determination that *Burrage* is **not retroactive to cases on collateral review.** *See Ashbaugh v. United States*, 736 F. App'x 435 (4th Cir. 2018), *pet. for cert. filed*, No. 18-1304, 2019 WL 1620580 (4th Cir. April 12, 2019). The petition for certiorari discusses the issue of retroactivity extensively and points out that the Fourth Circuit is in the minority of circuits who have decided against applying the case retroactively.

According to the petition for certiorari, the Fifth, Sixth, Seventh, and Eighth Circuits have found that *Burrage* is retroactive. Petitioner in this case has cited Seventh Circuit cases that find retroactivity. *See Krieger v. United States*, 842 F.3d 490 (7th Cir. 2016); *Gaylord v. United States*, 829 F.3d 500 (7th Cir. 2016). The Second Circuit does not appear to have finally decided the issue with respect to *Burrage*, however, the Second Circuit has held that *Alleyne v. United States*, 570 U.S. 99 (2013) (any fact that increases the mandatory minimum sentence for crime is an "element" of the crime, not a "sentencing factor," that must be submitted to jury) and *Peugh v. United States*, 569 U.S. 520 (2013) (Ex Post Facto Clause is violated when defendant is sentenced under current Guidelines providing a higher sentencing range than the Guidelines in effect at the time of offense) do not apply retroactively. *See United States v. Reid*, 735 F.3d 88 (2d Cir. 2013) (*Alleyne*) and *Herrerea Gomez v. United States*, 755 F.3d 142 (2d Cir. 2014) (*Peugh*). Thus, following Fourth Circuit law would not afford the petitioner review of his habeas petition under the "new" savings clause articulated by the Fourth Circuit, even assuming that *Burrage* applied to petitioner's sentence.

Petitioner has also asked the court to follow the Fifth Circuit in granting section 2241 relief pursuant to *Burrage*. *Santillana v. Upton*, 846 F.3d 779, 785 (5th Cir. 2017) (granting section 2241 relief for a *Burrage* claim). In *Santillana*, the district court denied the petition and ruled that Santillana could not meet the "gatekeeping" provisions for second or successive petitions because *Burrage* was not a new rule of constitutional law, made retroactive to cases on collateral review "by the Supreme Court." 846 F.3d at 782-83.

The Fifth Circuit reversed and held that the retroactivity element of the savings-clause analysis was not subject to a similar statutory limitation on retroactivity. Fifth Circuit precedent required only that the section 2241 petition be based on a "retroactively applicable Supreme Court decision," without specifying that the Supreme Court itself must have made the determination of retroactivity. *Id.* (quoting *Garland v. Roy*, 615 F.3d 391, 394 (5th Cir. 2010)). The *Santillana* court cited *Garland* for the proposition that Supreme Court decisions that substantively interpret federal statutes "*automatically* apply retroactively." *Id.* (citing *Garland*, 615 F.3d at 396) (emphasis added).

The Fifth Circuit then proceeded to consider the retroactivity of *Burrage*, finding that "[o]n its face, *Burrage* is a substantive decision that interprets the scope of a federal criminal statute." *Id.* at 783. The Fifth Circuit then quoted *Burrage*, which held that "'at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable ***under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C)*** unless

such use is a but-for cause of the death or injury.'" *Id.* (quoting *Burrage*, 571 U.S. at 218)) (emphasis added).

In addition to the lack of retroactivity of *Burrage* in the Fourth Circuit, even if this court were to assume that *Burrage* were retroactive, it does not help petitioner in this case. Petitioner was not found guilty under the "enhancement provision" of section 841(b)(1)(C) which was the subject of all of the Circuit cases citing *Burrage*, and the subject of *Burrage* itself. Rather, this petitioner was sentenced under a guidelines enhancement found in USSG 2D1.1(a)(2). It has been held that such a petitioner may not rely on *Burrage* for purposes of the savings clause. *See Torres Rodriguez v. Johnson*, No. 17-CV-1215, 2017 WL 9808666, at *2 (W.D. La. Dec. 29, 2017), *Rep't Rec. adopted*, 2018 WL 3351124 (W.D. La. July 6, 2018).

The court in *Torres Rodriguez* discussed *Santillana* and distinguished that case because Torres-Rodriguez was not "convicted" under section 841(b)(1)(C), but instead the homicide only factored into his case as a sentencing enhancement. *Id.* The court stated that Torres-Rodriguez could not satisfy the savings clause because the case did not establish that he might have been convicted of a "nonexistent offense." The same is true of petitioner in this case. *Burrage* does not apply to help petitioner satisfy the savings clause.

Petitioner argues that the Fourth Circuit has applied the savings clause to mandatory guidelines[8] cases in *Lester v. Flournay*, 909 F.3d 708 (4th Cir. 2018). While

---

[8] In *United States v. Booker*, 543 U.S. 220, 226-27 (2005), the Supreme Court struck down the "mandatory" nature of the Sentencing Guidelines. *See Smith v. Warden*, No. 3:18-CV-1111, 2019 WL 1877074, at *2 (D. Conn. Apr. 26, 2019) (the Supreme Court held that the Guidelines were advisory and not mandatory in 2005). Following *Booker*, courts have followed an "advisory" guidelines

13

it is true that *Lester* applied the savings clause to mandatory guidelines cases, the petitioner was still required to show that the decision upon which he based his challenge was retroactive to cases on collateral review. 909 F.3d at 712. In *Lester*, the petitioner was challenging the application of an enhanced guideline range based on his classification as a "career offender." *Id.* (citing USSG § 4B1.1(a)-(b)). The enhancement was applied in part because one of petitioner's prior convictions was a "crime of violence." *Id.*

However, after Lester's direct appeal and first section 2255 motion, the Supreme Court decided *Chambers v. United States*, 555 U.S. 122 (2009). After *Chambers*, which was held retroactive by the Seventh Circuit in *Navarez v. United States*, 674 F.3d 621, 623 (7th Cir. 2011), the Fourth and the Eleventh Circuits determined that Lester's prior offense was not a crime of violence. 909 F.3d at 712 (citing *United States v. Clay*, 627 F.3d 959, 969 (4th Cir. 2010); *United States v. Lee*, 586 F.3d 859, 874 (11th Cir. 2009)). In *Lester*, unlike the instant case, the government did not dispute that the "new authority" applied retroactively on collateral review. The only issue for the court in *Lester* was to determine under the Fourth Circuit standard for savings clause analysis, whether "due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect." *Id.* The court held that such a defect was "fundamental," rejecting the government's argument that any sentence falling below the statutory maximum was "per se" lawful and immune from a savings clause challenge. *Id.* at 714. The court ultimately held that a sentence is fundamentally defective when it

---

approach. *See Booker*, 543 U.S. at 245.

14

exceeds the mandatory Guidelines range that according to *later retroactive precedent*, should have applied. *Id.*

In this case, as stated above, the Fourth Circuit itself has determined that *Burrage* does not apply retroactively to cases on collateral review.[9] Thus, even if *Burrage* applied to petitioner's case, which this court finds that it does not, it has not been held to be retroactive by the very circuit in which petitioner was sentenced. *Ashbaugh, supra*. Thus, even if the court were to adopt the standard articulated in *Wheeler*, the petitioner in this case would not be able to challenge his sentence via the savings clause and section 2241.[10]

---

[9] As stated above, there is a difference between the Supreme Court holding that a constitutional case is retroactive to cases on collateral review, which would allow the petitioner to bring a second or successive section 2255 motion, and a lower court finding that a non-constitutional or statutory case is retroactive to cases on collateral review, which would not apply for purposes of a second or successive petition, but would apply in arguing that the section 2255 motion was inadequate or ineffective so that the petitioner could utilize the savings clause and bring a section 2241 petition.

[10] The court notes that in 2015, one of petitioner's co-defendants in the criminal action attempted to make a similar argument based on *Burrage*. *See Lewis v. United States*, No. WDQ-15-290, 2015 U.S. Dist. LEXIS 13948 (D. Md. Feb. 5, 2015). Mr. Lewis brought a petition for writ of habeas corpus under section 2241, claiming that he had been improperly sentenced. However, Mr. Lewis had already brought a prior 2255. After finding that Mr. Lewis was essentially challenging his sentence, a claim which would more properly be brought under section 2255, the judge who sentenced both petitioner and Mr. Lewis - Hon. William D. Quarles, Jr. - found that section 2255 was not "inadequate or ineffective" to test the legality of his detention. The court stated "this court finds no justification to construe [Mr. Lewis's] submission as a petition for writ of habeas corpus under 28 U.S.C. § 2241." *Id.* at *3. The court further found "no cause to treat [Mr. Lewis's filing] as a Motion to Vacate, Set Aside or Correct under 28 U.S.C. § 2255. Having already brought a § 2255 motion, any 'second or successive' 2255 motions filed by Lewis cannot be entertained without prior authorization from the court of appeals. . . ." *Id.* at *3-4. The court did not engage in a lengthy analysis, and this court also notes that, although Mr. Lewis was incarcerated in Virginia at the time he filed the petition in Maryland, there was no discussion of transferring the action, even though Lewis filed his petition under section 2241. *Lewis* was decided prior to *Wheeler* and relied upon *In re Jones*, 226 F.3d 333 (4th Cir. 2000). In *Jeter v. Saad*, No. 5:17-CV-98, 2019 U.S. Dist. LEXIS 28871, at *6 (W. Va. Feb. 20, 2019), the court distinguished between *In re Jones* and *Wheeler*, finding that the standard in *Wheeler* applied to sentencing challenges. *Id.* at *6. Notwithstanding the use of the *Wheeler* test, the court dismissed the petition because the petitioner could not show that the case he relied upon was made

Thus, the savings clause does not apply to petitioner, and this action is more properly brought as a successive 2255 petition. Because petitioner was sentenced in Maryland, this court has no jurisdiction to decide a motion to vacate the petitioner's sentence, and such motion would have to be considered by the Fourth Circuit because it is undisputed that petitioner has brought multiple section 2255 motions. When the court determines that it lacks jurisdiction over a section 2241 petition, the court may dismiss the action. *Bentley v. Fernandez*, No. 9:18-CV-1025, 2018 WL 4853286, at *3-4 (N.D.N.Y. Oct. 5, 2018). This court will recommend dismissing his petition for habeas corpus for lack of jurisdiction because the District of Maryland transferred it to the Northern District of New York in the first instance, and petitioner has already brought multiple section 2255 motions to vacate in Maryland.[11]

**WHEREFORE**, based on the findings above it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

---

retroactive to cases on collateral review.

[11] The court also notes that petitioner attempted to raise an claim based on *Burrage* in the document that was interpreted by the Maryland court as a "reply," when it was in reality a new motion based on *Holloway*. (*See* Dkt. No. 675 in 92-CR-301 at 7). Petitioner cited the 8th Circuit opinion, but dated it 2014, which was the date of the Supreme Court's decision in *Burrage*. It is unclear whether the court in Maryland considered this argument because the decision denying petitioner's motion was filed the day after he filed the document.

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: May 2, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge